**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

EUGENE TEASLEY,

        Plaintiff,

                                         Civil Action 2:18-cv-1079
                                         Judge Michael H. Watson
        v.                              Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Eugene Teasley ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Response in Opposition (ECF No. 13), Plaintiff's Reply (ECF No. 14), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** (ECF No. 10), and that the Commissioner's decision be **AFFIRMED**.

## I.      BACKGROUND

Plaintiff has filed several applications for Social Security benefits. On December 7, 2015, Plaintiff protectively filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act. He alleged a disability onset date of October 1, 2012. That claim was denied initially on February 3, 2016, and upon reconsideration on

March 31, 2016.   Administrative Law Judge Peter Boylan ("ALJ Boylan") held a hearing and subsequently issued a decision on July 19, 2016 ("2016 Decision"), finding that Plaintiff was not disabled within the meaning of the Social Security Act.   On October 14, 2016, the Appeals Council found no basis to review ALJ Boylan's decision.

Subsequently, on March 9, 2017, Plaintiff protectively filed his current application for a period of disability and disability insurance benefits under Title II of the Social Security Act. In his application, Plaintiff alleged a disability onset of October 1, 2012.   Plaintiff's application was denied initially on May 26, 2017, and upon reconsideration on August 29, 2017.   Plaintiff sought a hearing before an administrative law judge.   Administrative Law Judge Noceeba Southern ("ALJ Southern") held a hearing on March 8, 2018, at which Plaintiff, represented by counsel, appeared and testified.   Vocational expert Carol Mosley (the "VE") also appeared and testified at the hearing.   On March 27, 2018, ALJ Southern issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act ("2018 Decision").

Plaintiff requested that the Appeals Council review ALJ Southern's decision.   Plaintiff also submitted additional evidence to the Appeals Council, including treatment records from Phillip R. Cox, OTR/L, dated April 25, 2006, and treatment notes from the Veteran's Administration Medical Center, dated March 15, 2018 to April 26, 2018.   (R. at 2.)   With respect to the evidence from April 25, 2006, the Appeals Council found that the evidence "does not show a reasonable probability that it would change the outcome of the decision," and declined to include the evidence as exhibits.   (*Id.*)   Regarding the treatment records dated March 15, 2018 to April 26, 2018, the Appeals Council found that because Plaintiff was last insured for disability benefits on December 31, 2017, the evidence does not relate to the period at issue.   (*Id.*)   The Appeals Council therefore concluded that the evidence "does not affect the

decision about whether [Plaintiff was] disabled beginning on or before December 31, 2017."
(*Id.*)   On July 20, 2018, the Appeals Council denied Plaintiff's request for review and adopted ALJ Southern's decision as the Commissioner's final decision.   Plaintiff then timely commenced the instant action.

In his Statement of Specific Errors (ECF No. 10), Plaintiff contends that ALJ Southern erred by (1) affording "no significant weight" to the Department of Veterans Affairs' ("VA") disability rating; (2) failing to consider Plaintiff's right-hand pain and weakness a "severe," medically determinable impairment; (3) failing to include a limitation in Plaintiff's RFC for his inability to frequently use his right hand; and (4) failing to conduct a proper credibility assessment.   (Pl.'s Statement of Errors at 1-10, ECF No. 10.)   Plaintiff also contends that "[i]n the event [Plaintiff's] discharge records from the Army were not considered in the 2016 Decision, it was error for the ALJ to not consider them new evidence in the 2018 Decision." (*Id.* at 8.)

## II.      THE ADMINISTRATIVE DECISIONS

### A.      The 2016 Decision

On July 19, 2016, ALJ Boylan issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act based upon a prior application for benefits.   On October 14, 2016, the Appeals Council denied Plaintiff's request for review and adopted ALJ Boylan's decision as the Commissioner's final decision.   Because Plaintiff did not further appeal, ALJ Boylan's July 19, 2016 decision is final.   ALJ Boylan concluded that Plaintiff suffered from a number of severe, medically determinable impairments, including cerebral trauma, arthropathy, obstructive sleep apnea, affective disorder, anxiety disorder, and post-

traumatic stress disorder.   (R. at 235.)   ALJ Boylan further found that Plaintiff retained the

following residual functional capacity ("RFC"):

> [C]laimant has the residual functional capacity (RFC) to perform light work as
> defined in 20 CFR 404.1567(b) except the claimant can never crawl or climb
> ladders, ropes or scaffolds; occasionally kneel, crouch, or stoop.   The claimant can
> handle and finger frequently with the bilateral upper extremities, and can have no
> overhead reaching with the bilateral upper extremities.   The claimant is limited to
> simple, routine tasks.   The claimant can have occasional and superficial
> interactions with coworkers and supervisors, but no interaction with the public as
> part [of his] job duties.   The claimant is not able to perform at a production rate
> pace work, such as generally associated with assembly line work, but can perform
> goal oriented work, such as generally associated with office cleaning work.   The
> claimant is limited to tolerating occasional changes in a routine work setting.

(R. at 237.)

## B.        The 2018 Decision

On March 27, 2018, ALJ Southern issued a decision finding that Plaintiff was not

disabled within the meaning of the Social Security Act based upon his current application for

benefits.   (R. at 11-26.)   ALJ Southern found that the 2016 Decision was "binding on all parties

to the hearing through the date of its issuance."   (R. at 13.)   She concluded that Social Security

Acquiescence Rulings 98-3(6) and 98-4(6) apply to Plaintiff's claim because his application

"represents a subsequent disability claim with respect to an unadjudicated period . . . arising

under the same title of the Act as his prior claim, on which there was a final decision by an ALJ."

(R. at 14.)   Consequently, ALJ Southern concluded that she is bound by the findings of the

previous ALJ in the absence of new and material evidence or changed circumstances.   (R. at

13.)

At step one of the sequential evaluation process,[1] ALJ Southern found that Plaintiff had

---

1.   Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.   *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th

not engaged in substantial gainful activity since July 19, 2016, the date of the prior ALJ decision. (*Id.* at 14.) At step two, ALJ Southern found that Plaintiff had the severe impairments of history of cerebral trauma, arthropathy, obstructive sleep apnea, posttraumatic stress disorder, and affective and anxiety-related disorders. (*Id.* at 14.) At step three of the sequential process, ALJ Southern found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 16-17.) ALJ Southern adopted the limitations from the 2016 Decision, and set forth Plaintiff's RFC as follows:

> The claimant has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally kneel, crouch, and stoop, but never crawl or climb ladders, ropes, or scaffolds. He can frequently handle and finger but not overhead reach with his upper extremities. He can perform simple, routine tasks. He can occasionally and superficially interact with coworkers and supervisors. He must not have interaction with the public as part of his job duties. He is not able to perform at a production rate pace work, such as generally associated with assembly line work, but he can perform goal oriented

---

Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

work, such as generally associated with office cleaning work.  He can tolerate occasional changes in a routine work setting.

(*Id*. at 18.)   In assessing Plaintiff's RFC, ALJ Southern assigned "great" weight to the opinions of state-agency reviewing physicians Drs. Back and Teague and state-agency reviewing psychologist Dr. Matyi; "little" weight to the opinion of state-agency reviewing psychologist Dr. Ebben; "little" weight to the opinion of consultative examiner Dr. Lopez-Suescum; "significant" weight to the opinion of consultative psychological examiner Dr. Collins; and "no significant weight" to the VA's determination that Plaintiff was totally and permanently disabled.   (*Id*. at 21-23.)   ALJ Southern also found that Plaintiff's subjective complaints were "not entirely consistent with the medical evidence and other evidence in the record . . . ."   (*Id.* at 19.)

At step four, ALJ Southern found that Plaintiff is unable to perform any past relevant work.   (*Id*. at 24.)   At step five, relying on the VE's testimony, ALJ Southern concluded that Plaintiff could perform jobs existing in significant numbers in the national economy.   (*Id*. at 24.) She therefore found that Plaintiff was not disabled under the Social Security Act.   (*Id*. at 24-25.)

On July 20, 2018, the Appeals Council denied Plaintiff's request for review and adopted ALJ Southern's decision as the Commissioner's final decision.

### III.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"   *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.    ANALYSIS

As set forth above, in his Statement of Errors, Plaintiff contends that ALJ Southern erred by (1) affording "no significant weight" to the VA's disability rating; (2) failing to consider Plaintiff's right-hand pain and weakness a "severe," medically determinable impairment; (3)

failing to include a limitation in Plaintiff's RFC for his alleged inability to frequently use his

right hand; and (4) failing to conduct a proper credibility assessment. (Pl.'s Statement of Errors

at 1-10, ECF No. 10.) Plaintiff also contends that "[i]n the event [his] discharge records from

the Army were not considered in the 2016 Decision, it was error for the ALJ to not consider

them new evidence in the 2018 Decision." (*Id.* at 8.) In his Reply, Plaintiff asserts that this

Court should consider the additional evidence he submitted to the Appeals Council in this case.

(Pl.'s Reply at 2, ECF No. 14.)

## A.    ALJ's Consideration of Plaintiff's Alleged Right-Hand Impairment

Several of Plaintiff's contentions relate to the ALJ's consideration of his alleged right-

hand impairment. Plaintiff contends that ALJ Southern erred in failing to consider his

worsening right-hand pain and weakness as a severe, medically determinable impairment. (Pl.'s

Statement of Errors at 3, ECF No. 10.) He further contends that ALJ Southern should have

included a limitation in his RFC for his alleged inability to frequently use his right hand. (*Id.* at

8.) Plaintiff asserts that the "new" evidence in the record should have altered the 2016 RFC

assessment regarding his hand limitations. (Pl.'s Reply at 1-2, ECF No. 14.) Plaintiff also

posits that, to the extent ALJ Boylan did not consider his 2006 VA discharge records in

considering his right-hand limitations in the 2016 Decision, it was an error for ALJ Southern to

not consider those records as "new" evidence in considering his current application. (Pl.'s

Statement of Errors at 8, ECF No. 10.) Plaintiff's Reply also raises, for the first time, a

contention that this Court should consider the additional medical records he submitted to the

Appeals Council. (Pl.'s Reply at 2-3, ECF No. 14.)

1. **ALJ Southern's Application of Acquiescence Rulings 98-3(6) and 98-4(6) and *Drummond* to Plaintiff's Claim**

Although Plaintiff does not directly challenge ALJ Southern's application of Acquiescence Rulings 98-3(6) and 98-5(6) and *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) to his claim, he contends that she failed to properly review the new evidence regarding his right-hand impairment. According to Plaintiff, proper review of the new evidence would have required ALJ Southern to deviate from ALJ Boylan's findings in the 2016 Decision. Accordingly, the undersigned must determine if ALJ Southern appropriately considered Plaintiff's current claim in light of the 2016 Decision.

In *Drummond,* the United States Court of Appeals for the Sixth Circuit held that principles of *res judicata* apply to both claimants and the Commissioner in Social Security cases. 126 F.3d at 841–42. The *Drummond* Court specifically held that absent evidence of "changed circumstances" relating to a claimant's condition, "a subsequent ALJ is bound by the findings of a previous ALJ." *Id.* at 842. Following *Drummond*, the Social Security Administration issued AR 98-4(6), which provides, in pertinent part, as follows:

> [W]hen adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98–4(6), 1998 WL 283902, at *3 (June 1, 1998).

The Sixth Circuit recently clarified its *Drummond* decision in *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018). In *Earley*, the ALJ found that *Drummond* required him to give preclusive effect to a prior RFC determination absent "'new and material

evidence documenting a significant change in the claimant's condition.'" *Id.* (record citation omitted). The Sixth Circuit disagreed with the ALJ's approach and held that "[a]n individual may file a second application—for a new period of time—for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory threshold." 893 F.3d at 932. The Sixth Circuit explained that "the key principles protected by *Drummond*—consistency between proceedings and finality with respect to resolved applications"—do not prohibit the Social Security Administration "from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id.* at 931. Thus, "[w]hen an individual seeks disability benefits for a distinct period of time, each application is entitled to review." *Id.* at 933 (citations omitted). Nonetheless, "[f]resh review is not blind review," and "[a] later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id.* at 934. Indeed, "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Id.* at 933.

Here, as in *Earley*, ALJ Southern concluded that she was bound by the 2016 Decision in considering Plaintiff's 2017 application absent new and material additional evidence or changed circumstances. (R. at 13 ("[I]n the absence of new and material additional evidence or changed circumstances, a subsequent ALJ is bound by the findings of a previous ALJ or Appeals Council decision").) Because ALJ Southern's decision was issued before *Earley*, the Court must ask whether ALJ Southern, "despite purporting to follow *Drummond*, gave the evidence a fresh

look."  *Johnson v. Comm'r of Soc. Sec.*, No. 2:17-CV-13126, 2018 WL 6440897, at *15 (E.D. Mich. Oct. 22, 2018) (collecting cases).  "If so, then the ALJ's decision satisfied *Earley*; if not, then remand [i]s appropriate."  *Id.*

The undersigned concludes that ALJ Southern complied with the core principles set forth in *Earley*, as she gave "a fresh look" to Plaintiff's new application "while being mindful of past rulings and the record in the prior proceedings."  893 F.3d at 931.  She thoroughly discussed the "new" evidence submitted by Plaintiff, *i.e.* medical records from August 2016 through February 2018, as well as updated testimony from Plaintiff.  (R. at 19-24.)  ALJ Southern found that the updated record did not document new and material evidence of a change in Plaintiff's condition (R. at 13-14, 21), deterioration of Plaintiff's condition (R. at 16, 21), or of additional severe impairments (R. at 15).  Accordingly, and for the reasons explained in more detail below, ALJ Southern reasonably declined to deviate from ALJ Boylan's severe impairment and RFC findings.  *See, e.g., Lambert v. Comm'r of Soc. Sec.*, No. 1:18-CV-116, 2019 WL 336903, at *5 (S.D. Ohio Jan. 28, 2019) ("Because ALJ Nguyen gave a "fresh look" to the new evidence, a remand under *Earley* is not warranted, and the undersigned must conduct a substantial evidence review of ALJ Nguyen's decision."); *Earley*, 893 F.3d at 933 ("[I]t is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application."); *Washington v. Comm'r of Soc. Sec.*, No. 1:17-CV-773, 2019 WL 1367736, at *5 (S.D. Ohio Mar. 26, 2019) (declining remand where the ALJ reviewing the second application "did not merely rely upon the earlier denial," but "undertook an evaluation of the objective medical evidence presented and claimant's allegations of limitation").

### 2. Plaintiff's 2006 VA Discharge Records

Plaintiff contends that if the prior ALJ (ALJ Boylan) did not consider his 2006 medical records related to his Honorable Discharge from the Army in assessing his alleged right-hand impairment, ALJ Southern should have considered those records to be "new" evidence when considering his current application. (Pl.'s Statement of Errors at 4 and 8, ECF No. 10.) Plaintiff maintains that "it is prudent to view [his] [right-hand] condition around the time he received his Honorable Discharge from the Army" in June 2006. (*Id.* at 4.) The undersigned disagrees and finds no error with ALJ Southern's treatment of these records.

As a preliminary matter, Plaintiff is not permitted to relitigate his prior claim in this appeal. The medical records related to Plaintiff's Honorable Discharge are from 2006. In both his prior and current application for benefits, Plaintiff alleged a disability onset date of October 1, 2012. (R. at 11.) Although the discharge records are dated years prior to Plaintiff's alleged onset date of disability, they were included in the administrative record before ALJ Boylan (*see* Commissioner's Resp. in Opp. at 17 and Exhibits A, B, and C, ECF No. 13), and there is no evidence that ALJ Boylan failed to consider them in rendering the 2016 Decision. Even if ALJ Boylan failed to consider the 2006 discharge records, Plaintiff cannot challenge ALJ Boylan's 2016 findings in this appeal. The Sixth Circuit recently rejected a similar attempt to relitigate a prior claim, explaining as follows:

> Blackburn claims that the administrative law judge should have exercised her discretion to place Blackburn in an older age category, which would have made her eligible for benefits. She argues that the administrative law judge should have exercised this discretion when she initially "filed back in 2008"—through her first application. Appellant's Br. 8. But Blackburn had sixty days to appeal that decision, 42 U.S.C. § 405(g)–(h), and she did not. Claim preclusion prevents her from relitigating that same period today. *See Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 933 (6th Cir. 2018).

*Blackburn v. Comm'r of Soc. Sec.*, 748 F. App'x 45, 49 (6th Cir. 2018).    Such is the case here.

Plaintiff had sixty days to appeal ALJ Boylan's decision, but failed to do so.    As in *Blackburn*,

claim preclusion prevents Plaintiff from relitigating that same period today.

Further, Plaintiff fails to provide a sound reason why ALJ Southern should have treated

the 2006 discharge records as "new" evidence in considering his current application for benefits.

As set forth above, the 2006 discharge records were in the administrative record when ALJ

Boylan rendered the 2016 Decision.    Plaintiff cannot relitigate his prior claim in this appeal.

Thus, contrary to Plaintiff's contention, ALJ Southern properly focused on whether there was a

change in Plaintiff's condition since the 2016 Decision.    Although she was permitted to consider

the past administrative record, it was reasonable for her to "take the view that, absent new and

additional evidence, the first administrative law judge's findings are a legitimate, albeit not

binding, consideration in reviewing a second application."    *Earley*, 893 F.3d at 933.    Moreover,

given ALJ Southern's reliance upon recent records relating to Plaintiff's right-hand condition,

there exists no reasonable probability that consideration of decade-old records would have

changed her analysis.    Consistently, when Plaintiff submitted the 2006 discharge records to the

Appeals Council, it concluded that the "evidence does not show a reasonable probability that it

would change the outcome of the decision."    (R. at 2.)    The undersigned therefore finds this

contention of error to be without merit and **RECOMMENDS** that it be **OVERRULED**.

### 3. ALJ Southern's Consideration of Plaintiff's Right-Hand Impairment at Step Two

Plaintiff contends that ALJ Southern erred because she did not find his right-hand pain and weakness to be a severe, medically determinable impairment.

At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803-04 (6th Cir. 2012). The Sixth Circuit has construed a claimant's burden at step two as "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The inquiry is therefore "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id*. at 863 (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985).

Where the ALJ determines that a claimant had a severe impairment at step two of the analysis, "the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803, (6th Cir. 2003). Instead, the pertinent inquiry is whether the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e); *Pompa*, 73 F. App'x at 803 (rejecting the claimant's argument that the ALJ erred by finding that a number of her impairments were not severe where the ALJ determined that claimant had at least one severe impairment and considered all of the claimant's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (same).

14

Here, the ALJ found that Plaintiff had several severe impairments at Step Two of the sequential analysis and considered all of Plaintiff's impairments, including his alleged right-hand impairment, in assessing his RFC. (R. at 14-15, 18-23.) Accordingly, the undersigned finds no error at Step Two. Furthermore, as the Commissioner correctly points out, pursuant to *Earley*, ALJ Southern "properly used the prior ALJ's step two determination as a starting point and considered whether there was evidence of a change in Plaintiff's severe impairments." (Commissioner's Resp. in Opp. at 18, ECF No. 13); *see also Earley*, 893 F.3d at 931-33. Here, ALJ Southern discussed the updated evidence in the record and concluded that "the record does not document other severe impairments since the prior decision." (R. at 15.) The undersigned therefore finds no error at Step Two and **RECOMMENDS** that this contention of error be **OVERRULED**.

### 4. ALJ Southern's Consideration of Plaintiff's Right-Hand Impairment in Assessing his RFC

Plaintiff contends that ALJ Southern should have included a limitation in the RFC for his "inability to frequently use his right (dominant) hand." (Pl.'s Statement of Errors at 8, ECF No. 10.) In his Reply, Plaintiff asserts that ALJ Southern failed to give a "fresh look" at whether his prior RFC properly accounted for the right-hand limitations identified in his VA records. (Pl.'s Reply at 2, ECF No. 14.) The Commissioner counters that substantial evidence supports ALJ Southern's determination that Plaintiff's RFC was unchanged and that Plaintiff failed to identify evidence that the ALJ did not consider or that could reasonably be expected to change the outcome of the 2018 Decision. (Commissioner's Resp. in Opp. at 8-17, 18, ECF No. 13.) The undersigned agrees with the Commissioner and finds Plaintiff's contention of error unavailing.

ALJ Southern found that the updated record failed to demonstrate a deterioration in Plaintiff's condition that would allow her to deviate from the RFC set forth in the 2016 Decision. ALJ Southern explained her decision as follows:

> [T]he updated record fails to document deterioration in the claimant's condition. Rather, he has required only conservative, periodic care, with generally relatively unremarkable objective findings. . . . As the updated evidence does not document new and material evidence of a change in his condition, I must adopt the functional capacity identified in the prior ALJ decision.

(R. at 21.)

Although the ALJ was not *required* to adopt the prior ALJ's findings under *Earley*, it was reasonable for her to do so given that there was no evidence of a change in Plaintiff's condition. ALJ Southern properly gave a "fresh look" to the new evidence in the record, *i.e.*, evidence post-dating the 2016 Decision, and determined that it did not demonstrate a change in Plaintiff's condition warranting additional restrictions in the RFC. And, although ALJ Southern did not categorize Plaintiff's right-hand impairment as a severe impairment at Step Two, she thoroughly considered it in assessing Plaintiff's RFC.

Substantial evidence supports ALJ Southern's decision to adopt the RFC from the 2016 Decision, which, in relevant part, limited Plaintiff to frequent handling and fingering, no overhead reaching with his upper extremities, and no crawling or climbing ladders, ropes, and scaffolds. (R. at 18-19.) In reaching her decision, ALJ Southern considered a May 20, 2017 report of consultative examiner Edgar A. Lopez-Suescum, M.D., including his finding that Plaintiff had "impingement freezing of his right shoulder," but "had well preserved gross and fine manipulation skills for removing and putting things back on and tying shoelaces." (R. at 19; *see also* Dr. Lopez-Suescum's Report, R. at 900-04.) She also considered Dr. Lopez-

Suescum's finding that, despite complaint "of an inability to make a fist with his right hand or do a thumb finger position on the right hand," Plaintiff "had no evidence of muscle atrophy of the thenar or hypothenar muscles, forearm muscles, or biceps (Ex. B3F/3)," (R. at 20 (citing R. at 902)), and that Plaintiff had a "normal range of motion in spite of guarding," (R. at 20 (citing R. at 903).)   In addition to the findings specifically discussed by ALJ Southern, Dr. Lopez-Suescum's report provides that Plaintiff had 3/5 grip and pincher strength of his right hand, and that "fist clenching of the right hand is only about 50%."  (R. at 902.)   Dr. Lopez-Suescum opined that Plaintiff is "able to take care of his personal needs from the gross and fine manipulation point of view," (R. at 902), and that Plaintiff "needs an in depth psychological review to rule out exaggeration of his symptoms."  (R. at 902.)   The ALJ specifically considered Dr. Lopez-Suescum's suggestion that Plaintiff was possibly exaggerating his symptoms and that Plaintiff did not cooperate well during the examination.  (R. at 22 (citing R. at 902, 904).)   In addition to Dr. Lopez-Suescum's consultative report, ALJ Southern considered that a July 2017 examination revealed that Plaintiff had "intact motor, sensory, and cerebellar functions."  (R. at 20 (citing R. at 1229-30).)   She also considered that on December 7, 2017, Plaintiff had "slightly reduced strength in the right arm and [r]ight leg but normal muscle bulk and tone and normal reflex and sensory functions."  (R. at 20 (citing R. at 1353).)   ALJ Southern further considered that Plaintiff "was reportedly independent with mobility and activities of daily living."  (R. at 21 (citing R. at 1688).)   Although Plaintiff points to several other medical records discussing his right-hand pain and weakness, he fails to demonstrate that his condition changed since the ALJ Boylan's 2016 Decision.  (*See* Pl.'s Statement of Errors at 5-7, ECF No. 10.)

Based on this record, ALJ Southern reasonably concluded that Plaintiff failed to demonstrate a deterioration in his condition warranting a more restrictive RFC. ALJ Southern provided a fresh look at the new medical evidence—while being mindful of the prior 2016 Decision—and reasonably concluded that Plaintiff's condition had not deteriorated such that it required additional restrictions in the RFC. (R. at 21.)

Notably, the RFC assessed by ALJ Boylan and adopted by ALJ Southern includes several limitations related to Plaintiff's alleged right-hand impairment. Indeed, Plaintiff is limited to frequent handling and fingering, no overhead reaching with his upper extremities, and no crawling or climbing ladders, ropes, or scaffolds. (R. at 18.) Plaintiff contends, however, that he is unable to frequently use his right hand, and that a limitation to "occasional" handling and fingering would have been work preclusive. (Pl.'s Statement of Errors at 8, ECF No. 10 (citing R. at 135-36).) Plaintiff points to no evidence demonstrating that he should be limited to occasional handling and fingering. As set forth above, Dr. Lopez-Suescom found that Plaintiff "had well preserved gross and fine manipulation skills for removing and putting things back on and tying shoelaces" and that Plaintiff is "able to take care of his personal needs from the gross and fine manipulation point of view." (R. at 902.) Further, Plaintiff did not submit any opinion evidence suggesting that he is unable to frequently use his right hand or stating that he is limited to occasional handling and fingering. (Pl.'s Statement of Errors at 8, ECF No. 10 (contending that ALJ Southern should have included a limitation for inability to frequently use his right hand, but failing to point to any medical opinion supporting his assertion).)[2] In short, Plaintiff does

_____

2 Elsewhere in his Statement of Errors, Plaintiff argues that Dr. Lopez-Suescom "actually agreed Claimant has severe lifting and grasping limitations with his arms/hands which would not have supported a finding that [Plaintiff] can grasp, handle, and manipulate objects on a frequent

not point to any specific evidence that the ALJ failed to consider or that has a reasonable probability of affecting the outcome of the 2018 Decision. Accordingly, the undersigned finds no error in ALJ Southern's assessment of Plaintiff's RFC.

For the above-stated reasons, the undersigned **RECOMMENDS** that this statement of error be **OVERRULED**.

###    5.   Evidence Submitted to Appeals Council Regarding Plaintiff's Right-Hand Impairment

In his Reply, Plaintiff, for the first time, contends that this Court should consider the additional medical evidence that he submitted to the Appeals Council. Plaintiff submitted treatment notes from the Veteran's Administration Medical Center, dated March 15, 2018 to April 26, 2018, to the Appeals Council.[3] (R. at 2.) The Appeals Council found that this evidence was not relevant to the period at issue because Plaintiff was last insured for disability benefits on December 31, 2017. (*Id.*) Nonetheless, Plaintiff contends that "[p]erhaps if ALJ Southern had the most recent medical evidence reinforcing the severity of his right-hand

---

basis." (Pl.'s Statement of Errors at 10, ECF No. 10.) This is not an accurate summary of Dr. Lopez-Suescom's opinion. Instead, Dr. Lopez-Suescom opined as follows:

> He is able to take care of his personal needs from the gross and fine manipulation point of view. From the lifting point of view, he should be able to lift about 4-5 pounds. Carrying 4-5 pounds with his left upper extremity at least for 15-20 yards. Prognosis questionable. He needs an in depth psychological evaluation to rule out exaggeration of his symptoms??

(R. at 902.) Thus, Dr. Lopez-Suescom does not provide any limitations on grasping, handling, or manipulating objects, and instead opined that Plaintiff's gross and fine manipulation skills are intact. Plaintiff's contention is unavailing.

3 Plaintiff also submitted his 2006 discharge records, which are discussed in Section IV(A)(2), *supra*.

limitations and confirming that those limitations had been with him for over a decade, it would have resulted in a more restricted RFC which accounted for his right-hand limitations." (Pl.'s Reply at 2, ECF No. 14.)

It is **RECOMMENDED** that the Court find this argument to be **WAIVED** given that Plaintiff raised it for the first time in his Reply. *See, e.g., Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004) (noting that the court has consistently held that it will not consider arguments raised for the first time in reply).

If the Court declines to accept this recommendation, it is **RECOMMENDED** that the Court find it to be without merit. First, to the extent new and material evidence exists, Plaintiff's remedy would be to seek remand under Sentence Six of 42 U.S.C. § 405(g).

Sentence Six of 42 U.S.C. § 405(g) provides:

> The Court may…remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding…

42. U.S.C. § 405(g). The Sixth Circuit further defined the requirements that elements be "new," "material," and that the plaintiff show "good cause" as follows:

> For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.' ... Such evidence is 'material' only if there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.' . . . A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. . . . [T]he burden of showing that a remand is appropriate is on the claimant.

*Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (quoting *Foster v. Halter*,

279 F.3d 348, 357 (6th Cir. 2001)).

Here, Plaintiff failed to meet his burden of establishing that remand is warranted because he has not demonstrated "good cause" or that the additional evidence is "material." Indeed, the evidence cannot be material because Plaintiff was last insured for disability benefits on December 31, 2017, and the records are dated March 15, 2018 to April 26, 2018. (R. at 2.) Accordingly, there is not a reasonably probability that the Commissioner would have reached a different decision on Plaintiff's current claim had it considered those records.

For the foregoing reasons, undersigned therefore **RECOMMENDS** that this contention of error be **OVERRULED** as waived or without merit.

**B.     ALJ Southern's Consideration of the VA's Disability Rating**

Plaintiff asserts that ALJ Southern erred by affording the VA's disability rating "no significant weight" and by failing to consider the underlying bases for the disability rating. (Pl.'s Statement of Errors at 1-2, ECF No. 10) (citing VA's July 19, 2007 Rating Decision at R. 1277-92; R. 453-54).) The undersigned disagrees and finds Plaintiff's contention of error to be without merit.

For claims filed on or after March 27, 2017, the Social Security Administration "will not provide any analysis in [their] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [a claimant is] disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504 (2017). For claims filed before March 27, 2017, however, Social Security Regulations provide as follows:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by

another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504. Thus, a "determination made by another agency that [a claimant is] disabled or blind is not binding on [the Commissioner]." 20 C.F.R. § 404.1504. The Sixth Circuit recently explained that "[t]he basis for this regulation is sound: different rules applied by other agencies 'may limit the relevance of a determination of disability made by another agency.'" *Joseph v. Comm'r of Soc. Sec.*, 741 F. App'x 306, 310 (6th Cir. 2018) (quoting *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 388 (6th Cir. 2013)). Nonetheless, "an ALJ must at least consider a VA's disability decision and explain reasons for the weight she assigns to it." *Id.*; *see also Kessans v. Comm'r of Soc. Sec.*, No. 18-5831, 2019 WL 1748702, at *3 (6th Cir. Apr. 16, 2019).

Plaintiff's VA disability rating was issued in July 2007 and was considered and discounted by both ALJ Boylan and ALJ Southern. Given that ALJ Boylan explained his reasons for discounting the VA disability rating, ALJ Southern could have reasonably adopted ALJ Boylan's findings. ALJ Southern, however, offered a thorough discussion of the VA disability rating and her explanation for discounting it. Specifically, ALJ Southern explained as follows:

> The record documents that the claimant received a Veterans Administration determination that he was totally and permanently disabled due to 100 percent service-connected disabilities (Exs. B6E, B7F, and B14F). However, the question of disability is a matter reserved for the Commissioner (20 CFR 404.1527(d)). Statements that a claimant is "disabled", "unable to work,["], can or cannot perform a past job, meets a Listing, or the like are not medical opinions but are administrative findings dispositive of a case, requiring familiarity with the Regulations and legal standards set forth therein. Such issues are reserved to the Commissioner, who cannot abdicate her statutory responsibility to determine the ultimate issue of disability. Furthermore, disability decisions by any other governmental agency, such as the VA, are based on that agency's rules and are not binding on the Social Security Administration (SSA) (20 CFR 404.1504). Because the VA disability rating reflects another agency's application of its own

rules, it is generally of limited evidentiary value without consideration of the supporting evidence on which the rating was based. The VA expresses disability as a percentage of diminished earning capacity. These percentage values vary with the severity of the veteran's medical condition applied to a hypothetical average person's ability to earn income. In contrast, SSA does not assess degrees of disability. Rather, the SSA determines whether a claimant is disabled (20 CFR 404.1501). To meet our definition of disability, a claimant must have a severe impairment(s) that makes him unable to perform past work or any other substantial gainful work that exists in the national economy.

Except for claims involving findings of unemployability, a VA disability rating is based on a consideration of the effects of a disease or injury on a hypothetical average person's ability to earn income without consideration of a specific veteran's age, education, or work experience (38 CFR 4.19). In contrast, SSA provides an individualized assessment that focuses on a claimant's ability to perform work in the national economy. As part of SSA's individualized assessment, the Act requires SSA to consider whether a claimant has worked (substantial gainful activity), whether the impairment(s) will last at least 12 months or result in death (the duration requirement), and whether his RFC, age, education, and work experience (the vocational factors) affect whether he can engage in other work that exists in significant numbers in the national economy. In this case, the updated above-summarized longitudinal evidence documents generally relatively unremarkable findings that are not supportive of the severity of the impairments indicated by the VA. Accordingly, I give the VA determination no significant weight in my determination of the claimant's disability status under SSA rules and regulations.

(R. at 22-23.)

The undersigned finds no error in ALJ Southern's consideration of the VA disability rating or in her decision to assign no significant weight to the rating. First, ALJ Southern reasonably discounted the VA's finding that Plaintiff is "disabled" because such a determination is reserved to the Commissioner. *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (explaining that "the conclusion of disability is reserved to the [Commissioner]"). Although the ALJ will consider opinions "on the nature and severity of [a claimant's] impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass*, 499 F.3d at 511.

Next, ALJ Southern reasonably discounted the VA's disability rating on the basis that the VA's regulations for assessing disability differ from those of the Social Security Administration. *See Joseph*, 741 F. at 310 (finding no error where the ALJ discounted the VA's disability rating, in part, because of the differences between the VA's disability system and the Social Security's disability system); *Kessans v. Comm'r of Soc. Sec.*, No. 18-5831, 2019 WL 1748702, at *3 (6th Cir. Apr. 16, 2019) (finding no error in ALJ's decision to give only "some consideration" to the VA's decision where the ALJ "acknowledged the VA's disability rating but explained that the VA uses different standards for making disability determinations and that the VA's records on Kessans contained neither function-by-function analysis nor language describing how Kessans's PTSD limits her ability to work").

Finally, ALJ Southern reasonably discounted the VA's disability rating because "the updated . . . longitudinal evidence documents generally relatively unremarkable findings that are not supportive of impairments indicated by the VA." (R. at 23.) *See, e.g.*, *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 510–11 (6th Cir. 2013) (explaining that a VA disability rating is only one factor an ALJ is required to consider and that the ALJ was not required to go into detail about medical findings from 1987 in her decision, which was issued in 2010). Here, ALJ Southern considered the VA disability rating and found that a finding of total and permanent disability was not supported by the updated longitudinal record, which demonstrated that Plaintiff "required only conservative, periodic care with generally relatively unremarkable objective findings." (R. at 21-23.)

The undersigned finds that ALJ Southern properly considered and explained her reasons for discounting the VA's disability rating and that those reasons are supported by substantial

evidence.   Accordingly, the undersigned **RECOMMENDS** that this statement of error be

**OVERRULED**.

**C.       ALJ Southern's Credibility Assessment**

Plaintiff also asserts that ALJ Southern erred in evaluating his credibility, specifically

related to his allegations of right-hand pain and post-traumatic stress disorder.   (Pl.'s Statement

of Errors at 9-10, ECF No. 10.)   Within this contention of error, Plaintiff alleges that ALJ

Southern failed to consider the relevant factors in assessing his credibility.   (*Id.*)

For decisions rendered on or after March 28, 2016, the ALJ will evaluate a claimant's

statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged

disability under SSR 16-3p.   SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).   SSR 16-3p

superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996), which required the ALJ to evaluate the

overall credibility of a plaintiff's statements.   In contrast, SSR 16-3p requires the ALJ to

evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall

*credibility*, or character for truthfulness.   *See id.* at *11 ("In evaluating an individual's

symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the

manner typically used during an adversarial court litigation. The focus of the evaluation of an

individual's symptoms should not be to determine whether he or she is a truthful person.").

Although SSR 16-3p supersedes SSR 96-7p, "according to the very language of SSR 16-3p, its

purpose is to 'clarify' the rules concerning subjective symptom evaluation and not to

substantially *change* them."   *Brothers v. Berryhill*, No. 5:16-cv-01942, 2017 WL 2912535, at

*10 (N.D. Ohio June 22, 2017).   The rules were clarified primarily to account for the difference

between a credibility determination, which necessarily impacts the entirety of a claimant's

subjective testimony, and a consistency determination, which applies only to specific statements regarding symptoms. *See* SSR 16-3p at *2. It follows, therefore, that the procedures for reviewing an ALJ's credibility assessment under SSR 16-3p are substantially the same as the procedures under SSR 96-7p. Accordingly, the undersigned concludes that existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's clarification.

The Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247.

The ALJ's credibility determination "with respect to [a claimant's] subjective complaints of pain" is generally given deference. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight

the adjudicator gave to the individual's statements and the reasons for that weight."  *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").  In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication.  20 C.F.R. § 404.1529(c)(3); SSR 16–3p; *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011), *adopted*, 2011 WL 3843703 (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision).

Here, ALJ Southern's analysis supplies substantial evidence supporting her credibility finding and properly considers the requisite factors in evaluating Plaintiff's subjective statements.  The ALJ thoroughly discussed the record evidence and concluded that it did not fully support Plaintiff's subjective complaints, explaining as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, his statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision.
>
> \*      \*      \*
>
> In summary, the updated record fails to document deterioration in the claimant's condition.  Rather, he has required only conservative, periodic care with generally relatively unremarkable objective findings.  His mental status functioning has generally been relatively normal despite his report of some mental symptomatology. . . .
>
> \*      \*      \*

27

The claimant's level of activity, as summarized throughout this decision, is inconsistent with the level and persistence of symptoms that he alleges. He has required only conservative treatment since the prior ALJ decision, and the record documents some cancelled appointments (Ex. B4F/40, 115). His medications have helped control or reduce his symptoms, and the record does not document significant, persistent medication side effects. In summary, the location, duration, frequency, and intensity of his alleged symptoms, as well as precipitating and aggravating factors, are adequately addressed and accommodated in the above residual functional capacity.

(R. at 19, 21, 23.)

Substantial evidence supports the ALJ's credibility findings. First, ALJ Southern reasonably discounted Plaintiff's allegations on the grounds that the objective evidence did not support his subjective complaints. *See* 20 C.F.R. § 404.1529(c)(2) (objective medical findings are useful in assessing the intensity and persistence of a claimant's symptoms); *Long v. Comm'r of Soc. Sec.*, 56 F. App'x 213, 214 (6th Cir. 2003) (holding that plaintiff "did not introduce sufficient objective evidence to support the existence or severity of her allegedly disabling headaches"). ALJ Southern considered the updated medical records and noted largely normal findings on examination. (R. at 19-21.) Substantial evidence supports her finding that the medical records from August 2016 through February 2018, detail conservative treatment and relatively unremarkable findings on examination. (R. at 18-21) (*See, e.g.*, R. at 895-97, 900-02, 1017, 1028, 1031-32, 1105, 1215-17, 1228-30, 1251, 1253, 1271-72, 1326-27, 1340, 1353, 1447, 1450, 1457, 1706-07.)

ALJ Southern also reasonably considered that Plaintiff required only conservative, periodic care; that his medications helped control or reduce his symptoms; and that he cancelled some appointments. *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (in assessing credibility, the adjudicator must consider, among other factors, "[t]he type, dosage, effectiveness,

and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" and "[t]reatment, other than medication, the individual receives or has received"); 20 C.F.R. § 404.1529(c)(3) (same).   For example, at the consultative examination with Dr. Collins, Plaintiff reported that he was not currently receiving psychological treatment.   (R. at 896.)   He also has no history of psychiatric hospitalizations.   (*Id.*)   Additionally, a May 2017 VA treatment notes indicates that Plaintiff was last seen by his primary care physician in June 2016, and that he made the May 2017 appointment "just to make certain refills on meds."   (R. at 1017.)   At that exam, Plaintiff reported that he planned to head West, perhaps to Arizona or Mexico.   (*Id.*)   As the ALJ pointed out, the record also documents some cancelled appointments.   (R. at 946.)   The medical records further document that Plaintiff's medications helped control or reduce his symptoms and that he does not have any significant, persistent side effects.   (R. at 1216, 1222, 1251.)

Next, ALJ Southern reasonably considered that Plaintiff's level of activity "is inconsistent with the level and persistence of symptoms that he alleges."   (R. at 23.)   *See* 20 C.F.R. § 404.1529(c)(3)(i) (daily activities may be useful to assess nature and severity of claimant's symptoms); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered [the claimant's] ability to conduct daily life activities in the face of his claim of disabling pain.").   For example, during the consultative examination with Dr. Collins, Plaintiff reported that he drives as needed and is able to utilize a telephone; independently performs all daily hygiene activities; takes care of his dogs; takes care of things around the house; and performs household chores.   (R. at 895.)   Plaintiff further reported that he had a girlfriend of several years and that he drove himself to the evaluation.   (R.

at 892, 894.)   Dr. Collins also noted that Plaintiff's social functioning appeared unimpaired. (R. at 895.)   Additionally, treatment notes from January 23, 2018, provide that Plaintiff is independent with mobility and activities of daily living.   (R. at 1688.)   At the hearing, Plaintiff testified that he can use a vacuum cleaner and tries to clean the house.   (R. at 82, 96.)   The undersigned finds that the ALJ reasonably concluded that Plaintiff's activities of daily living are not consistent with his subjective complaints.

Plaintiff's generic objections to ALJ Southern's credibility determination are unavailing. For example, he claims that the ALJ cherry-picked the evidence in assessing his credibility and maintains that the ALJ ignored medical evidence supporting his severe limitations.   The only evidence he cites in support of this broad assertion, however, is Dr. Lopez-Suescum's consultative report.   (Pl.'s Statement of Errors at 10, ECF No. 10.)   Plaintiff claims that Dr. Suescum "actually agreed Claimant has severe lifting and grasping limitations with his arms/hands which would not have supported a finding that Mr. Teasley can grasp, handle and manipulate objects on a frequent basis."   (*Id*.)   Plaintiff fails to accurately set forth Dr. Lopez-Suescum's findings, however.   Instead, Dr. Suescum opined as follows:

> [Plaintiff] is able to take care of his personal needs from the gross and fine manipulation point of view.   From the lifting point of view, he should be able to lift about 4-5 pounds.   Carrying 4-5 pounds with his left upper extremity at least for 15-20 yards.   Prognosis questionable.   He needs an in depth psychological evaluation to rule out exaggeration of his symptoms??

(R. at 902.)   Thus, Dr. Lopez-Suescom does not provide any limitations on grasping, handling, or manipulating objects, and instead opined that Plaintiff was limited in his ability to lift and carry.   Furthermore, ALJ Southern reasonably found that Dr. Lopez-Suescom's opinions were not "particularly reliable" given his notes that he had difficulty eliciting accurate information

30

about Plaintiff's complaints and that Plaintiff was possibly exaggerating his symptoms and did not cooperate well during the exam.   (R. at 22 (citing R. at 900-04).)   Plaintiff cites to no other evidence in support of his contention that ALJ Southern ignored medical evidence supporting his alleged limitations.

In summary, the undersigned finds that ALJ Southern properly evaluated Plaintiff's allegations regarding his symptoms and that substantial evidence supports the ALJ's credibility assessment.   Although substantial evidence may also support an alternative finding, the ALJ's findings were within the ALJ's permissible "zone of choice" and the Court will not re-weigh the evidence.   *See Blakley*, 581 F.3d at 406.   Accordingly, it is **RECOMMENDED** that Plaintiff's contention of error be **OVERRULED**.

## V.        DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.   Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VI.        PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).   A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.   Upon proper objections, a Judge of this Court may accept, reject, or

modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

   /s/ *Chelsey M. Vascura*            
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE